## IN THE UNITED STATES DISTRICT COURT FOR THE
### SOUTHERN DISTRICT OF GEORGIA
### BRUNSWICK DIVISION

DARRIANNE D. BURRIES,            *
                                *
     Plaintiff,             *
                                *
        v.               *        CV 219-081
                                *
SEA ISLAND COMPANY,              *
                                *
     Defendant.             *

## O R D E R

Before the Court is Defendant Sea Island Company's ("Defendant") motion to dismiss and compel arbitration.[1]  (Doc. 8.)  For the reasons contained herein, Defendant's motion is **GRANTED**.

## I.  BACKGROUND

Plaintiff Darrianne Burries ("Plaintiff") is "an African-American citizen of the United States and a resident of the state of Georgia" who, since May 1, 2017, has worked as an esthetician in Defendant's spa department.  (Compl., Doc. 1, at 5; Wainwright Decl., Doc. 8-1, ¶¶ 2-3.)  When Defendant hired Plaintiff,

---

[1] Defendant claims Plaintiff incorrectly named Sea Island Company in her Complaint and Sea Island Acquisition, LLC is the proper name.  (Mot. to Dismiss & Compel Arbitration, Doc. 8, at 1 n.1; see also Am. Corporate Disclosure Statement, Doc. 10, at 1.)  The Court **DIRECTS** the Clerk to modify Defendant's name on the docket to **SEA ISLAND ACQUISITION, LLC**.  References herein to Defendant or Sea Island refer to the proper entity name.

Plaintiff was presented with an Arbitration Agreement, which provided:

> I agree, as does [Defendant], to arbitrate any dispute, claim, or controversy between me and [Defendant] which may otherwise be brought in a court or before a governmental agency, whether or not arising out of or related to my application for employment, employment, or termination of employment with [Defendant], and whether or not arising before, during or after any employment relationship between the parties.

(Wainwright Decl., ¶ 4; Arbitration Agreement, Doc. 8-1, Ex. A, at 5.)   The Arbitration Agreement expressly covers "any claims relating to or arising from employment and termination of employment, and any claims which might be raised pursuant to any law, constitution, regulation, or any statute, . . . including but not limited to any and all matters arising under . . . Title VII of the Civil Rights Act of 1964" ("Title VII").   (Arbitration Agreement, at 5.)   Plaintiff electronically agreed to the Arbitration Agreement.   (Id.)

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 23, 2019, alleging that beginning as early as January 1, 2017, she was subjected to discrimination on account of her race, color, and national origin and retaliation.   (EEOC Case, Doc. 1-1, at 3.) The EEOC closed Plaintiff's case because it was "unable to conclude that the information obtained establishe[d] violations of the

statutes." (Id. at 1.) On April 25, 2019, the EEOC issued Plaintiff her notice of right to sue. (Id.)

On July 15, 2019, Plaintiff wrote to Ms. Wainwright — Defendant's Vice President of Human Resources — "requesting arbitration to assist in resolving the discrimination complaint between [Plaintiff] [and] [Defendant]." (Pl.'s Letter to Wainwright, Doc. 8-1, Ex. B, at 7; see also Wainwright Decl., ¶¶ 1, 6.) Plaintiff also engaged with counsel for Defendant to otherwise coordinate arbitrating this dispute. (Donohue Decl., Doc. 8-2, ¶ 2; Email Correspondence, Doc. 8-2, Ex. A, at 4-6.) Prior to asking for an arbitrator, Plaintiff filed suit in this Court on July 8, 2019. (See Compl., at 1.)

## II. LEGAL STANDARD

There is an "emphatic federal policy in favor of arbitral dispute resolution." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 631 (1985). The Federal Arbitration Act ("FAA") requires courts to "rigorously enforce agreements to arbitrate." Davis v. Prudential Sec., Inc., 59 F.3d 1186, 1192 (11th Cir. 1995) (quoting Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987)). "[T]he party seeking to compel arbitration has the initial burden of producing the arbitration agreement and establishing the contractual relationship necessary to implicate the FAA and its provisions granting th[e] [c]ourt

3

authority to dismiss or stay [the] [p]laintiff's cause of action and to compel arbitration." Compere v. Nusret Miami, LLC, 396 F. Supp. 3d 1194, 1199 (S.D. Fla. 2019) (citation and internal quotation marks omitted). If the party for arbitration meets its burden of production, the burden shifts to the party opposing arbitration to show why the court should not compel arbitration. Bhim v. Rent-A-Ctr., Inc., 655 F. Supp. 2d 1307, 1311 (S.D. Fla. 2009).

### III. DISCUSSION

As an initial matter, the Court has subject matter jurisdiction over this dispute because Plaintiff's Title VII claims arise under federal law.[2] 28 U.S.C. § 1331. As to Defendant's motion to dismiss and compel arbitration, the Court analyzes whether (A) the FAA governs the Arbitration Agreement, (B) the Arbitration Agreement is enforceable, (C) the Arbitration Agreement covers the current dispute, and (D) the Court should dismiss or stay this action pending arbitration.

### A. FAA

The FAA applies to agreements "evidencing a transaction involving commerce." 9 U.S.C. § 2. The Supreme Court has

---

[2] The FAA does not confer federal subject matter jurisdiction. See Tamiami Partners, Ltd. ex rel. Tamiami Dev. Corp. v. Miccosukee Tribe of Indians of Fla., 177 F.3d 1212, 1222 (11th Cir. 1999); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu, 637 F.2d 391, 395 (5th Cir. Unit B 1981) (stating that to compel arbitration under the FAA, the court must have an independent basis of jurisdiction, such as federal question or diversity).

construed this language broadly, holding that Section 2's "involving commerce" language must be read to extend the Act's reach to the limits of Congress's Commerce Clause power. Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 268, 277 (1995). The FAA expressly excludes from coverage "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign interstate commerce." 9 U.S.C. § 1. Interpreting this provision, the Supreme Court found the exclusion to apply only to employees "actually engaged in the movement of goods in interstate commerce." Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 109, 112 (2001) (quoting Cole v. Burns Int'l Sec. Servs., 105 F.3d 1465, 1471 (D.C. Cir. 1997) ("[E]very circuit to consider this issue squarely has found that section 1 of the FAA exempts only the employment contracts of workers actually engaged in the movement of goods in interstate commerce.") (collecting cases)).

Plaintiff, an esthetician in a spa department, does not engage in the movement of goods in interstate commerce. Finding the exclusion inapplicable to the employment contract here, however, does not welcome the FAA's authority. The Court must still determine whether Plaintiff's employment contract is a transaction that affects interstate commerce. Cole, 105 F.3d at 1470.

The Supreme Court stated, "Congress' Commerce Clause power may be exercised in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic

5

activity in question would represent a general practice subject to federal control." Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56-57 (2003) (citation and internal quotation marks omitted). In construing whether an employment contract is a transaction that "involves interstate commerce," thereby triggering Section 2 of the FAA, courts "generally focus[] on the nature of the defendant[-]employer's business, not the plaintiff[-]employee's individual duties." Williams v. Eddie Acardi Motor Co., No. 3:07-cv-782-J-32JRK, 2008 WL 686222, at *5, *6 (M.D. Fla. Mar. 10, 1008); see also Chambers v. Groome Transp. of Ala., 41 F. Supp. 3d 1327, 1342 (M.D. Ala. 2014) ("The issue is not whether [the] [p]laintiff['s] employment responsibilities were confined to intra-state shuttle bus services. Rather, the focus is on [the defendant]'s overall employment practices."). As such, if a defendant-employer's "overall employment practices affect commerce, the Commerce Clause requirement is satisfied." Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1370 (11th Cir. 2005).

Here, Plaintiff works in the spa department at what appears to be a resort. (See Am. Corporate Disclosure Statement, at 2 (Sea Island Resort Holdings, LLC is the "100% equity holder of Sea Island Acquisition, LLC").) It is clear that Plaintiff's employment at a resort affects interstate commerce given that a core focus of Defendant's business is attracting and welcoming residents of other states to experience its Sea Island resort.

6

Cf. Obas v. Ritz-Carlton Hotel Co., No. 2:17-cv-150-FtM-99MRM, 2017 WL 11358348, at *3 (M.D. Fla. Nov. 2, 2017) (finding the FAA governed the arbitration provision arising from the plaintiff's employment agreement with the hotel company), adopted by 2017 WL 11358298 (Nov. 21, 2017); see also Royal v. CEC Entm't, Inc., No. 4:18-cv-302, 2019 WL 2252151, at *3 (S.D. Ga. May 24, 2019) (employment contract covering a plaintiff in the service industry). As such, the FAA governs this Arbitration Agreement.

## B. Validity of Arbitration Agreement

The Arbitration Agreement is valid under Georgia law, which is the applicable law given that the contract at issue here was executed in Georgia. (Mot. to Dismiss & Compel Arbitration, at 6-7; see also Compl., at 1-2); Caley, 428 F.3d at 1368 ("[S]tate law generally governs whether an enforceable contract or agreement to arbitrate exists."). "Under Georgia law, a binding contract requires 'a definite offer and complete acceptance, for consideration.'" Shubert v. Scope Prods., Inc., No. 2:10-CV-00101-RWS, 2011 WL 3204677, at *2 (N.D. Ga. July 27, 2011) (quoting Moreno v. Strickland, 567 S.E.2d 90, 92 (Ga. Ct. App. 2002)).

Here, a valid arbitration agreement exists. Plaintiff electronically agreed to be bound by the Arbitration Agreement, which states, "I agree, as does [Defendant], to arbitrate any dispute, claim, or controversy between me and . . . [Defendant]."

Consequently, Plaintiff and Defendant entered a binding, valid arbitration agreement.

## C. Applicability of Arbitration Agreement

Because the FAA creates a presumption in favor of arbitrability, Paladino v. Avnet Comput. Techs., Inc., 134 F.3d 1054, 1057 (11th Cir. 1998), any doubts concerning the scope of arbitral issues must be construed in favor of arbitration. Mitsubishi, 473 U.S. at 626. The Eleventh Circuit has held that if parties intend to exclude categories of claims from their arbitration agreement, the parties must clearly express such intent. Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217, 1222 (11th Cir. 2000). In other words, issues will be deemed arbitrable unless it is clear that the arbitration agreement intentionally omits them. First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 945 (1995).

Here, the Parties agreed "to arbitrate any dispute, claim, or controversy . . . which may otherwise be brought in a court or before a governmental agency, whether or not arising out of or related to [Plaintiff's] application for employment, employment, or termination of employment with . . . [Defendant], and whether or not arising before, during or after any employment relationship between the parties." Delineated claims include those "arising from employment . . . and . . . under . . . Title VII." In this suit, Plaintiff alleges discrimination under Title VII arising

8

from her employment with Defendant.  Because Title VII claims can be compelled to arbitration, <u>Bender v. A.G. Edwards & Sons</u>, 971 F.2d 698, 699-701 (11th Cir. 1992), and the Parties agreed to arbitrate Title VII claims arising from Plaintiff's employment with Defendant, Plaintiff's claims are subject to mandatory arbitration.

## D. Status Pending Arbitration

Defendant moves to dismiss this action as a consequence of the Court finding all claims arbitrable.  (Mot. to Dismiss & Compel Arbitration, at 1; <u>see also id.</u> at 1 n.2.)  Section 3 of the FAA provides that once a district court is "satisfied that the issue involved in [a] suit . . . is referable to arbitration" the district court "shall on application of one of the parties stay the trial of the action" until the arbitration is complete.  9 U.S.C. § 3.  A stay is not required, then, without a request for one because Section 3's stay requirement is triggered "on application of one of the parties."  <u>See United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Wise Alloys, LLC</u>, 807 F.3d 1258, 1268 (11th Cir. 2015) ("[S]ection 3 qualifies the mandatory nature of any stay it authorizes by requiring a party to apply for the stay."); <u>see also McGhee v. Mariner Fin., LLC</u>, No. 1:19-CV-00934-TWT-JFK, 2019 WL 5491825, at *6-7 (N.D. Ga. Aug. 7, 2019) (dismissing case

because no party requested a stay).  Because no stay is requested, the Court finds dismissal proper.

### IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss and compel arbitration (Doc. 8) is **GRANTED**.  **IT IS HEREBY ORDERED** that Plaintiff and Defendant **SHALL ARBITRATE** all claims raised in this dispute and this case is **DISMISSED WITHOUT PREJUDICE**.  The Court **DIRECTS** the Clerk to **TERMINATE** all motions and deadlines and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this ___15th___ day of June, 2020.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA